## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Case No. _____

**MORGAN SCHOEPFER**,                    **JURY TRIAL DEMANDED**

    *Plaintiff,*

vs.

**WALT DISNEY PARKS
AND RESORTS U.S., INC.**,

    *Defendant.*

_____/

## COMPLAINT

Plaintiff, MORGAN SCHOEPFER ("**Plaintiff**"), by undersigned counsel, Kaplan Employment Law, P.A., complains of Defendant, WALT DISNEY PARKS AND RESORTS U.S., INC., ("**Defendant**"), and alleges as follows:

## INTRODUCTION

1. This case is about Disney's refusal to accommodate a disabled employee, resulting in the employee's seizure and hospitalization, followed by a retaliatory campaign of reprimands, termination threats, and a defiant failure to accommodate even after she complained.

2. Plaintiff brings this action under the American with Disabilities Act of 1990 ("**ADA**"), as amended 42 U.S.C. § 12101 *et seq*., the Americans with Disabilities Act Amendments Act ("**ADAAAA**") of 2008, and the Florida Civil

Rights Act of 1992, as amended, § 760.01, et seq., Florida Statues ("**FCRA**") to correct unlawful employment practices based on Plaintiff's disabilities and to provide Plaintiff with appropriate relief.

3. Defendant has damaged Plaintiff and Plaintiff is entitled to relief.

## JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § § 1331 (federal question).

5. Venue is proper in the Middle District of Florida under 42 U.S.C. § 20003-5(f)(3) and 28 U.S.C. § 1391(b) because a substantial portion of the acts or omissions giving rise to this action occurred in the Middle District of Florida and because the Defendant maintains its principal place of business within the Middle District of Florida.

## PARTIES

6. Plaintiff Morgan Schoepfer is an individual woman residing in Mount Airy, Maryland.

7. Plaintiff is authorized to bring this action by 42 U.S.C. § 12117(a).

8. Defendant Walt Disney Parks and Resorts US, Inc., is a Florida profit corporation, with a principal address at 1375 Buena Vista Drive, 4th Floor North Lake Buena Vista, Florida 32830.

9.     Defendant is a "covered employer" under 42 U.S.C. § 12111(5)(A) because Defendant employs 15 or more employees on its payroll for 20 or more calendar workweeks in either the current or preceding calendar year.

## ADMINISTRATIVE PREREQUISITES

10.     Plaintiff has complied with all administrative requirements.

11.     On or about October 11, 2022 Plaintiff timely dual filed a charge of discrimination (Charge No. 510-2023-00245) with the U.S. Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**"), naming Walt Disney Parks and Resorts U.S. as the Respondent.

12.     Plaintiff checked boxes for discrimination based on retaliation, disability, retaliatory hostile work environment, and hostile work environment.

13.     On December 13, 2022, the EEOC issued a right to sue letter.

14.     Plaintiff timely commenced this action within 90 days of receiving the notice of suit rights from the EEOC.

## FACTUAL ALLEGATIONS

15.     Plaintiff is a 23-year-old disabled woman.

16.     Plaintiff has a record of diagnoses including Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility.

17.     Plaintiff's Cerebral Palsy disability impacts Plaintiff's balance and ability to lift or handle heavy items.

18.     Plaintiff's Gastroparesis affects the stomach muscles and prevents proper stomach emptying, while Plaintiff's Colonic Dysmotility causes the paralyses of the large intestine. Plaintiff thus experiences frequent urges to use the restroom.

19.     Plaintiff, a disability advocate, was thrilled to work at Disney. Indeed, Plaintiff was a Disney fanatic growing up, and would visit from Maryland with her family.

20.     Working at Disney was a dream for Plaintiff until she found herself in the most hostile work environment she had ever experienced.

**<u>Disney Management Refuses to Enforce Plaintiff's Accommodations</u>**

21.     On or about April 14, 2022, Plaintiff submitted accommodations request to Bud Gober, ("Gober"), Defendant's "Employee Relations – Accommodations Case Advocate."

22.     Plaintiff requested these accommodations: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.

23.     Around May 23, 2022, Defendant assigned Plaintiff as a "Cast member" at World of Disney ("WOD"), a high-traffic Disney retail store located in the Disney Springs shopping center.

24.    WOD Management assigned Plaintiff to "Support" rather than "Sales" shortly after Plaintiff began.  In the "Sales" role, Plaintiff could access a chair to rest—if the manager allowed—while Plaintiff worked the register. The support assignments required pushing merchandise on the sales floor, and handling boxes and inventory of products in the stock room, in violation of Plaintiff's lifting restriction. Likewise, the support role did not allow Plaintiff to sit and rest every 30 minutes, in violation of Plaintiff's accommodations.

25.    During late May 2022, Plaintiff complained to Zach (last name unknown) and Brad Zimmermann ("Zimmermann"), the "Guest Experience Manager" that Defendant was not honoring her accommodations.

26.    Plaintiff complained to Defendant that she could not physically move merchandise on the floor because she has cerebral palsy. Plaintiff complained that she felt unsafe and that her health was in danger because of the heavy lifting and absence of a chair rest.

27.    Although Defendant reassigned Plaintiff to "sales," Plaintiff's supervisors refused to enforce Plaintiff's chair accommodation.

28.    Leaders would say, "The chair on the floor is not a Disney look."

29.    On the occasion Plaintiff had a chair, Defendant intimidated Plaintiff by requiring her to carry a heavy chair across the salesroom floor. Plaintiff complained that her cerebral palsy makes her balance difficult and it's hard to carry a large chair across the floor.

5

30.    Plaintiff explained that guests had seen her struggle and had asked to helped, but Plaintiff's supervisor stopped the guests from assisting, and made clear that Plaintiff was not to accept any assistance from guests.

**Plaintiff Soils Herself Because Defendant Refuses to Accommodate**

31.    Around July 9, 2022, Plaintiff soiled herself because Defendant failed to allow Plaintiff access to the restrooms.

32.    After Plaintiff complained, a leader stated, "Next time it happens and the bathroom is full, find a leader and we'll clear the bathroom for you." Plaintiff pushed back and said that she would have had the accident because Defendant failed to preemptively accommodate Plaintiff—that was the point of the accommodation.

33.    Plaintiff soiled herself on multiple occasions because of Defendant's refusal to provide Plaintiff with access to a restroom.

**Disney Intimidates, Coerces, and Subjects Plaintiff to a Disability-Charged Hostile Work Environment**

34.    On or about August 11, 2022, Lara, Plaintiff's coworker, had a stroke after Disney failed to accommodate her.

35.    Lara told Plaintiff that David, a leader, told her "There's no emergency until you're in an ambulance."

36.    On or about August 20, 2022, Plaintiff's supervisor, Melanie Barrett ("Barrett"), Defendant's "Guest Experience Manager" assigned Plaintiff to Support once again in defiance of Plaintiff's accommodations.

37.    Barrett berated Plaintiff in front of guest while Plaintiff pushed merchandize carts between the sales floor and the back room. Barrett reprimanded Plaintiff, and humiliated her in front of guests and coworkers.

38.    On or about August 21, 2022, Plaintiff reported Barrett to Zimmerman about withholding accommodations and assignments to Support.

39.    Zimmermann said, "In terms of your accommodations … I can't control that, and I'm telling you now, that's probably not going to change."

40.    Zimmermann suggested Plaintiff should quit to resolve the issue. Zimmermann said, "So, if knowing that means that you're not going to be here, then I can't say I blame you for wanting to go."

41.    Plaintiff pushed back, citing Defendant's purported commitment to inclusivity of disabled individuals.

42.    Zimmerman intimidated Plaintiff and said, "Inclusiveness is a public relations thing … it's not what you think."

43.    Barrett confronted Plaintiff after the meeting with Zimmermann, and told Plaintiff, "I no longer respect you as a human or a cast member because you reported me to every other leader."

**Plaintiff is Hospitalized Amid Disney's Refusal to Accommodate**

44.     On September 15, 2022, Defendant refused to provide Plaintiff a chair.

45.     Jessica Pustizzi ("Pustizzi"), Plaintiff's co-worker, had been working downstairs, when Plaintiff approached her.

46.     Plaintiff said, "I went to the bathroom and hit my head on the floor, I woke up, and then came to find you."  Plaintiff said, "I really don't feel well, I think I need to go to the hospital."  Plaintiff explained that she had been standing for so long and that she did not have a chair to rest."

47.     Pustizzi then went to get a team leader and found Brian. Upon their return, Pustizzi and Brian found Plaintiff collapsed on the floor.

48.     At around 8:30 P.M., Plaintiff collapsed, lost consciousness, had a seizure and was convulsing on the floor. Rescue personnel rushed Plaintiff to the hospital.



49.     While in the hospital, Karina (last name unknown) visited. Plaintiff explained that this is not okay and that she would be getting a lawyer. Karina said, "We don't need to go that far. I will sit with a proprietor."

50.     However, emergency room personnel determined "Your passing out episode likely occurred due to standing for long periods of time. Causing your blood pressure to drop. Please attempt to get rest. Stay hydrated."

Morgan Schoepfer, It was our pleasure to take care of you today in the Emergency Department.

**Your passing out episode likely occurred due to standing for long periods of time. Causing your blood pressure to drop. Please attempt to get rest. Stay hydrated.**

51.     Consequently, but for Defendant's refusal to honor Plaintiff's accommodation, Plaintiff would not have had a seizure, nor would she have been rushed to the hospital for emergency medical attention.

**<u>Defendant Begins Retaliatory Campaign Against Plaintiff</u>**

52.     When Plaintiff was released from the hospital, Colleen Salisbury, ("Salisbury"), Defendant's "Sr. Manager Employee Relations – Crisis Management & Accommodations" said, "We are a big corporation, so we do make mistakes. We'd like to do better but we will not get there overnight."

53.     Bill Madden ("Madden"), Senior Manager at World of Disney told Plaintiff, her hospitalization was "a bump in your experience here, and I don't want that to tarnish your opinion of the Walt Disney Company."

54.     On or about September 23, 2022, Plaintiff text messaged manager Brian, that she had a panic attack thinking about her shift as she was preparing to return. Specifically, Plaintiff was scared because Disney's managers and supervisor said, "things would not change overnight."

55.     Defendant marked Plaintiff out as a "personal" day, until Plaintiff complained that she was not out because she did not want to work.

56.     On September 24, 2022, Defendant once again assigned Plaintiff to "Support" where her duties included physical pushing of merchandise, and no chair and no rest break.

10

57.    Plaintiff texted messaged Brian on September 24, 2022:

> Hello: I just saw that I'm scheduled in support for today and the next three shifts.   I cannot risk again going to the hospital because I hace (sic) not had a chair. I have been told no chairs are allowed unless at the cashier and that's what u have requested. Even after the accident I just don't understand why you continue to asssigning (sic) me to support without a chair. Since the beginning of my time at WOD I have complained about multiple failures to accomodate (sic) and it continues to happen.  I can only work if I am assigned to sales on the cashier without fearing that I will collapse again and risking my life.  Do you agree that I should be assigned to sales where I can have a chair to sit on periodically?  Also, can you please provide s contact for human resources. I would like to report the discrimination I've experienced outside of the leaders at WOD who I have repeatedly complained to.  Thanks, Brian.

58.    Plaintiff explained that she did not believe any action was taken even to begin accommodating her after the accident.

59.    On September 24, 2022, Defendant reprimanded Plaintiff.

60.    Plaintiff text messaged Brian and asked where she could file a discrimination complaint.  Brian did not respond.

61.    On or about September 25, 2022, Defendant assigned Plaintiff to support once again, where Plaintiff was required to push heavy merchandise. Plaintiff told leaders she would leave if she had to work Support.  Leaders told Plaintiff there were no sales positions to pick up. Plaintiff explained that she wanted to leave because Defendant refused to accommodate her.  Plaintiff was

then pulled into the office. Defendant issued Plaintiff a release of shift, ("ROS"), used for employees who left work unexcused, without explanation.

62.    Plaintiff said, "I don't understand, you would think after I got severely hurt in this building, my safety moving forward would be a priority. Why is it so hard for there to be follow-through in what I was promised?"

63.    The leader said, "We are a large corporation and we cannot guarantee that there won't be hang ups or coincidences in which issues come up, but once they do, we try to resolve them."

64.    On or about October 2, 2022, Defendant again assigned Plaintiff to Support for: October 9, 10, 13, 14, 15.

65.    On October 11, 2022, Plaintiff filed an EEOC charge of discrimination for disability discrimination, hostile work environment, and retaliatory hostile work environment.

66.    Defendant reduced Plaintiff's hours after and because she complained about Defendant failing to accommodate Plaintiff.

67.    On October 21, 2022, Defendant provided Plaintiff with a third reprimand when she arrived at work. Plaintiff brought doctor's notes for required absences because of Plaintiff's medical conditions. Defendant refused to accept the doctors notes and reprimanded Plaintiff.  Defendant told Plaintiff that she would be terminated upon her next reprimand.

12

68.   On October 28, 2022, Plaintiff again was not accommodated a chair to rest after 30 minutes.

69.   On October 29, 2022, Defendant refused to provide Plaintiff a chair. Plaintiff requested that Cassandra, one of Defendant's managers provide Plaintiff a chair as per her accommodation.

70.   Consequently, after standing at the WOD register for well beyond 30 minutes without a chair rest, Plaintiff felt lightheaded as if she were going to faint. Instead of a chair, Plaintiff huddled over to rest in a windowsill.



71.     Even Plaintiff's coworker, Julia Taylor ("Taylor") tried to persuade Cassandra that Plaintiff needed her chair break because of her multiple disabilities. Still, Cassandra refused to allow Plaintiff a chair to rest.

72.     On November 1, 2022, Plaintiff text messaged Brian that she could not work without her accommodation and that she does not feel safe at work.

73.     On November 8, 2022, Disney reprimanded Plaintiff and warned her that she would be terminated upon her next reprimand.

74.     On November 30, 2022, Disney terminated Plaintiff's employment.

75.     Defendant continued to assign Plaintiff to Support because Plaintiff complained that her accommodations were not being met and that she was in physical danger in support.

76.     Defendant slashed Plaintiff's working hours because of Plaintiff's disabilities and because Plaintiff exercised, attempted to exercise, or otherwise enjoyed rights protected by the ADA/ADAA, the FCRA.

77.     Defendant continued to assign Plaintiff to support, requiring her to lift and push more than 10 pounds, and not to have a chair.

78.     Defendant violated the ADA/ADAA by discriminating against Plaintiff because of Plaintiff's disability and retaliated against Plaintiff for requesting an accommodation, opposing disability discrimination, intimidation, and hostility.

79.   As a result of Defendant's unlawful conduct, in violation of the ADA/ADAA, Plaintiff has suffered damages.

80.   Plaintiff has suffered emotional distress, mental anguish, loss of personal dignity, and other intangible damages.

81.   Plaintiff seeks punitive damages against Defendant as Disney willfully violated Plaintiff's rights.

82.   Defendant is liable for depriving Plaintiff of Plaintiff's personal dignity and civil right to pursue an equal employment opportunity in a work environment free from discrimination, harassment, and retaliation.

## CAUSES OF ACTION

### COUNT I
### ADA, 42 U.S.C. § 12113(b)(5)(A)
### Failure to Accommodate – Disability

83.   Plaintiff reincorporates the allegations in paragraphs 15-82.

84.   Defendant violated the ADA by discriminating against Plaintiff on the basis of Plaintiff's actual or perceived disabilities or record of impairment by failing to provide reasonable accommodations for Plaintiff's disabilities.

85.   Plaintiff is diagnosed with Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility. Because Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility substantially limit at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

86.    Plaintiff is a qualified individual under 42 U.S.C. § 12112(8) because Plaintiff can and did perform the essential functions of her job with reasonable accommodations.

87.    Defendant is a covered employer because Defendant engages in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

88.    Plaintiff demanded specific requests for reasonable accommodations: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.

89.    Plaintiff's specific request to have a chair to sit and rest every 30 minutes was a reasonable accommodation under the ADA because such accommodation would enable Plaintiff to perform the essential functions of cashier.

90.    Defendant failed to allow Plaintiff a chair to rest after 30 minutes of standing in defiance of her accommodations during late May 2022, and, at the very least, on September 15, 24, 25, October 9, 10, 13, 14, 15, 28, 29, and November 1, 2022.

91.    Defendant's failure to allow Plaintiff a chair to rest after 30 minutes of standing resulted in Plaintiff's seizure, convulsing on the floor, unconsciousness, emergency medical attention and hospitalization.

16

Emergency room personnel pronounced the accident occurred because Plaintiff was standing for too long without a break.

92.    Defendant continued to fail to accommodate Plaintiff even after her seizure and hospitalization, which occurred on September 15, 2022.

93.    Plaintiff further demanded a specific request to have access to the restroom stalls.

94.    Plaintiff's specific request to have access to the restroom stalls is and was a reasonable accommodation under the ADA because granting same would enable Plaintiff to perform the essential functions of cashier without soiling herself.

95.    Disney failed to accommodate Plaintiff's request during July and August 2022, which resulted in her soiling herself on three separate occasions.

96.    The above allegations give rise to the reasonable inference that Defendant violated 42 U.S.C. § 12113(b)(5)(A) by failing to accommodate Plaintiff during her employment.

97.    Because Disney failed to accommodate Plaintiff's specific requests, Plaintiff has suffered damages.

**COUNT II**
**FCRA § 760.10**
**Disability – Failure to Accommodate**

98.    Plaintiff reincorporates the allegations in paragraphs 15-82.

99.   Defendant violated the FCRA by discriminating against Plaintiff on the basis of Plaintiff's actual or perceived disabilities or record of impairment by failing to provide reasonable accommodations for Plaintiff's disabilities.

100.   Plaintiff is diagnosed with Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility. Because Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility substantially limit at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the FCRA.

101.   Plaintiff is a qualified individual under the FCRA because Plaintiff can and did perform the essential functions of her job with reasonable accommodations.

102.   Defendant is a covered employer because Defendant engages in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year.

103.   Plaintiff demanded specific requests for reasonable accommodations: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.

104.   Plaintiff's specific request to have a chair to sit and rest every 30 minutes was a reasonable accommodation under the FCRA because such

accommodation would enable Plaintiff to perform the essential functions of cashier.

105.   Defendant failed to allow Plaintiff a chair to rest after 30 minutes of standing in defiance of her accommodations during late May 2022, and, at the very least, on September 15, 24, 25, October 9, 10, 13, 14, 15, 28, 29, and November 1, 2022.

106.   Defendant's failure to allow Plaintiff a chair to rest after 30 minutes of standing resulted in Plaintiff's seizure, convulsing on the floor, unconsciousness, emergency medical attention and hospitalization. Emergency room personnel pronounced the accident occurred because Plaintiff was standing for too long without a break.

107.   Defendant continued to fail to accommodate Plaintiff even after her seizure and hospitalization, which occurred on September 15, 2022.

108.   Plaintiff further demanded a specific request to have access to the restroom stalls.

109.   Plaintiff's specific request to have access to the restroom stalls is and was a reasonable accommodation under the ADA because granting same would enable Plaintiff to perform the essential functions of cashier without soiling herself.

110.   Disney failed to accommodate Plaintiff's request during July and August 2022, which resulted in her soiling herself on three separate occasions.

19

111.   The above allegations give rise to the reasonable inference that Defendant violated the FCRA by failing to accommodate Plaintiff during her employment.

112.   Because Disney failed to accommodate Plaintiff's specific requests, Plaintiff has suffered damages.

## COUNT III
### ADA, 42 U.S.C. §12101
### Retaliatory Hostile Work Environment

113.   Plaintiff reincorporates the allegations in paragraphs 15-82.

114.   Plaintiff engaged in ADA protected activity by demanding specific requests for reasonable accommodations: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.   During late May 2022, Plaintiff further engaged in protected activity by complaining that her accommodations were not being enforced.

115.   Plaintiff suffered adverse actions that were materially adverse after and because Plaintiff engaged in the above-described protected activity. Defendant took an adverse employment action against Plaintiff by ignoring Plaintiff's weight-lifting restrictions and reassigning Plaintiff, repeatedly, to Support—a more physically strenuous role with a substantial increase in physical demands than Plaintiff's role in Sales. Moreover, Plaintiff could not

20

have a chair in Support and was required to push and pull heavy merchandise between the backroom and the sales floor.

116.  Any reasonable worker in Plaintiff's position (an individual with cerebral palsy) might well have been dissuaded from complaining a failure to accommodate if the employee knew the consequence would be reassignment to a more strenuous position with a substantial increase in physical demands.

117.  A causal link exists between Plaintiff's protected activity and the adverse actions because Defendant was aware of Plaintiff's protected activity when Defendant took the adverse actions against Plaintiff within days of Plaintiff's protected activity.  Defendant was aware of Plaintiff's failure to accommodate complaints during May 2022 when Defendant reassigned Plaintiff from Sales to Support a mere days later.

118.  Therefore, the temporal proximity between Plaintiff's protected activity and the adverse action is sufficiently close in time to support the inference that the two events are not wholly unrelated.

119.  Accordingly, Plaintiff has provided sufficient factual allegations to draw the reasonable inference that Defendant retaliated against Plaintiff in violation of the ADA.

120.  Plaintiff has been damaged by Defendant's violation of the ADA/ADAA.

## COUNT IV
### ADA, 42 U.S.C. § 12203(b)
### Interference, Coercion, or Intimidation

121.   Plaintiff reincorporates the allegations in paragraphs 15-82.

122.   Defendant violated the ADA by coercing, threatening, or interfering Plaintiff because Plaintiff exercised or enjoyed rights under the ADA.

123.   Plaintiff exercised rights or enjoyed rights under the ADA by requesting reasonable accommodations to: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.

124.   Plaintiff further exercised rights under the ADA by complaining that Defendant was not enforcing Plaintiff's reasonable accommodations even after her accident on September 14, 2022.

125.   Defendant's supervisors and managers repeatedly told Plaintiff that she should quit, and that things would not change overnight and that inclusivity was just for public relations, and she would not be accommodated.

126.   Zimmermann said, "In terms of your accommodations … I can't control that, and I'm telling you now, that's probably not going to change." Zimmermann said, "So, if knowing that means that you're not going to be here, then I can't say I blame you for wanting to go." Zimmerman told Plaintiff, "Inclusiveness is a public relations thing … it's not what you think."

127.   Moreover, Plaintiff's supervisor, Barrett, told Plaintiff, "I no longer respect you as a human or a cast member because you reported me to every other leader."

128.   Salisbury told Plaintiff, "We are a big corporation, so we do make mistakes. We'd like to do better but we will not get there overnight."

129.   Defendant repeatedly reprimanded Plaintiff even after Plaintiff brought in doctor's notes excusing her for medical reasons following her seizure. Defendant intimidated Plaintiff and told her she would be terminated.

130.   Taken together, the above allegations give rise to the reasonable inference that Defendant interfered, coerced, and or intimidated Plaintiff because she has enjoyed and or exercised her rights under the ADA.

131.   As a result of Defendant's violations of the ADA, Plaintiff has suffered damages.

132.   Defendant is vicariously or directly liable for the above-described environment because Defendant had actual knowledge of the discrimination and because Defendant's managers, supervisors and executives directly participated and facilitated the discrimination.

133.   Taken together, the above allegations give rise to the reasonable inference that Defendant interfered, intimidated, or coerced Plaintiff in violation of 42 U.S.C. § 12203(b).

134. As a result of Defendant's actions in violation of 42 U.S.C. § 12203(b), Plaintiff has suffered damages.

135. As the above-described harassment was knowing and willful, Plaintiff seeks punitive damages against Disney.

### COUNT V
### FCRA, §760.10(1)(a)
### Interference, Coercion, or Intimidation

136. Plaintiff reincorporates the allegations in paragraphs 15-82.

137. Defendant violated the FCRA by coercing, intimidating, threatening, and/or interfering with Plaintiff because she exercised and/or enjoyed rights under the ADA, incorporated into the FCRA.

138. Plaintiff exercised rights or enjoyed rights under the ADA by requesting reasonable accommodations to: (1) a chair to sit and rest every 30 minutes, (2) access to restrooms, (3) 10-pound lifting restriction, and (4) no handling open food or bathroom cleaning.

139. Plaintiff further exercised rights under the ADA by complaining that Defendant was not enforcing Plaintiff's reasonable accommodations even after her accident on September 14, 2022.

140. Defendant's supervisors and managers repeatedly told Plaintiff that she should quit, and that things would not change overnight and that inclusivity was just for public relations, and she would not be accommodated.

24

141.   Zimmermann said, "In terms of your accommodations … I can't control that, and I'm telling you now, that's probably not going to change." Zimmermann said, "So, if knowing that means that you're not going to be here, then I can't say I blame you for wanting to go." Zimmerman told Plaintiff, "Inclusiveness is a public relations thing … it's not what you think."

142.   Moreover, Plaintiff's supervisor, Barrett, told Plaintiff, "I no longer respect you as a human or a cast member because you reported me to every other leader."

143.   Salisbury told Plaintiff, "We are a big corporation, so we do make mistakes. We'd like to do better but we will not get there overnight."

144.   Defendant repeatedly reprimanded Plaintiff even after Plaintiff brought in doctor's notes excusing her for medical reasons following her seizure. Defendant intimidated Plaintiff and told her she would be terminated.

145.   Taken together, the above allegations give rise to the reasonable inference that Defendant interfered, coerced, and or intimidated Plaintiff because she has enjoyed and or exercised her rights under the ADA.

146.   As a result of Defendant's violations of the ADA, Plaintiff has suffered damages.

147.   Defendant is vicariously or directly liable for the above-described environment because Defendant had actual knowledge of the discrimination

and because Defendant's managers, supervisors and executives directly participated and facilitated the discrimination.

148.   Taken together, the above allegations give rise to the reasonable inference that Defendant interfered, intimidated, or coerced Plaintiff in violation of FCRA, § 760.10(1)(a).

149.   As a result of Defendant's actions in violation of FCRA, § 760.10(1)(a), Plaintiff has suffered damages.

150.   As the above-described harassment was knowing and willful, Plaintiff seeks punitive damages against Disney.

**COUNT VI**
**ADA, 42 U.S.C. § 12203(a)**
**Retaliation**

151.   Plaintiff reincorporates the allegations in paragraphs 15-82.

152.   Defendant violated the ADA/ADAA by intentionally discriminating against Plaintiff after and because Plaintiff opposed acts made unlawful by the ADA/ADAA.

153.   On September 24, Plaintiff engaged in protected activity by stating, "I can only work if I am assigned to sales on the cashier without fearing that I will collapse again and risking my life."

154.   Plaintiff suffered adverse actions that were materially adverse after and because Plaintiff engaged in the above-described protected activity.

Defendant took an adverse employment action against Plaintiff by reprimanding her on September 24, assigning her to support on September 25.

155.   On or about October 2, 2022, Defendant again assigned Plaintiff to Support for: October 9, 10, 13, 14, 15. On October 21, 2022, Defendant provided Plaintiff with a third reprimand when she arrived at work. Plaintiff brought doctor's notes for required absences because of Plaintiff's medical conditions

156.   Any reasonable worker in Plaintiff's position (an individual with multiple disabilities) might well have been dissuaded from complaining a failure to accommodate if the employee knew the above-described consequences would result.

157.   A causal link exists between Plaintiff's protected activity and the adverse actions because Defendant was aware of Plaintiff's protected activity when Defendant took the adverse actions against Plaintiff within days of Plaintiff's protected activity.  Defendant was aware of Plaintiff's complaints during September of 2022 after her accident when Defendant refused to accommodate Plaintiff, reprimanded her during September and October 2022.

158.   Therefore, the temporal proximity between Plaintiff's protected activity and the adverse action is sufficiently close in time to support the inference that the two events are not wholly unrelated.

159.   Accordingly, Plaintiff has provided sufficient factual allegations to draw the reasonable inference that Defendant retaliated against Plaintiff in violation of the ADA.

160.   Plaintiff has been damaged by Defendant's violation of the ADA/ADAA.

### COUNT VII
### ADA, 42 U.S.C § 12101
### Hostile Work Environment – Disability

161.   Plaintiff realleges the allegations in Paragraphs 15-82.

162.   Defendant violated the ADA by subjecting Plaintiff to an unsafe, abusive, physically threatening, and humiliating work environment because of her disabilities, altering the terms and conditions of Plaintiff's employment.

163.   Plaintiff is diagnosed with Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility. Because Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility substantially limit at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the ADA.

164.   Defendant subjected Plaintiff to unwelcome harassment, hostility, physical threats, abuse, and humiliation because of her disabilities.

165.   Plaintiff perceived the harassment as offensive because Plaintiff complained about disability discrimination on multiple occasions and filed an EEOC charge during her employment.

166. Plaintiff soiled herself on multiple occasions because of Defendant's insistence on refusing to provide the bathroom accommodation, resulting in physically threatening conduct based on Plaintiff's Gastroparesis and Colonic Dysmotility.

167. Plaintiff convulsed on the floor, had a seizure, and was hospitalized after Defendant refused to provide Plaintiff a chair to rest every thirty minutes.

168. Defendant repeatedly assigned Plaintiff to Support where she would not have a chair, and when Plaintiff worked Sales, Defendant required Plaintiff to drag a heavy chair across the sales room floor and refused anyone to help Plaintiff.

169. Any reasonable person in Plaintiff's position would likewise adjudge the above-described harassment as offensive because such conduct was frequent, severe, physically threatening and humiliating, and because the harassment unreasonably interfered with Plaintiff's job performance.

170. On September 24, 2022, Plaintiff said, "I can only work if I am assigned to sales on the cashier without fearing that I will collapse again and risking my life." Notwithstanding, that day, Defendant reprimanded Plaintiff, warned that she would be terminated.

171.   On September 25, 2022, Defendant assigned Plaintiff to support once again, where Plaintiff was required to push heavy merchandise, and have no chair to rest after 30 minutes of standing.

172.   Defendant failed to provide Plaintiff her accommodations on October 9, 10, 13, 14, 15, 28, 29, resulting in physically threats, harm, humiliation, and abuse because of Plaintiff's disabilities.

173.   On October 29, 2022, Cassandra, one of Defendant's managers refused Cassandra refused to provide Plaintiff a chair after Plaintiff begged for one, and enlisted the help of her coworker, Taylor.

174.   On November 1, 2022, Defendant once again physically threatened Plaintiff by withholding her accommodations.

175.   On November 8, 2022, Disney reprimanded Plaintiff and warned her that she would be terminated upon her next reprimand even if she attended doctor's appointments that were medically necessary. Defendant continued to assign Plaintiff to Support because Plaintiff complained that her accommodations were not being met and that she was in physical danger.

176.   Defendant is vicariously or directly liable for the above-described environment because Defendant had actual knowledge of the discrimination and because Defendant's managers, supervisors and executives directly participated and facilitated the discrimination.

177.   These allegations provide sufficient factual detail to suggest intentional discrimination in the form of a hostile work environment because of Plaintiff's disabilities.

178.   Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the ADA.

## COUNT VIII
### FCRA § 760.10
### Hostile Work Environment – Disability

179.   Plaintiff realleges the allegations in Paragraphs 15-82.

180.   Defendant violated the FCRA by subjecting Plaintiff to an unsafe, abusive, physically threatening, and humiliating work environment because of her disabilities, altering the terms and conditions of Plaintiff's employment.

181.   Plaintiff is diagnosed with Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility. Because Cerebral Palsy, Crohn's Disease, Gastroparesis, and Colonic Dysmotility substantially limit at least one of Plaintiff's major life activities, Plaintiff is an individual with a disability under the FCRA.

182.   Defendant subjected Plaintiff to unwelcome harassment, hostility, physical threats, abuse, and humiliation because of her disabilities.

183.   Plaintiff perceived the harassment as offensive because Plaintiff complained about disability discrimination on multiple occasions and filed an EEOC charge during her employment.

184. Plaintiff soiled herself on multiple occasions because of Defendant's insistence on refusing to provide the bathroom accommodation, resulting in physically threatening conduct based on Plaintiff's Gastroparesis and Colonic Dysmotility.

185. Plaintiff convulsed on the floor, had a seizure, and was hospitalized after Defendant refused to provide Plaintiff a chair to rest every thirty minutes.

186. Defendant repeatedly assigned Plaintiff to Support where she would not have a chair, and when Plaintiff worked Sales, Defendant required Plaintiff to drag a heavy chair across the sales room floor and refused anyone to help Plaintiff.

187. Any reasonable person in Plaintiff's position would likewise adjudge the above-described harassment as offensive because such conduct was frequent, severe, physically threatening and humiliating, and because the harassment unreasonably interfered with Plaintiff's job performance.

188. On September 24, 2022, Plaintiff said, "I can only work if I am assigned to sales on the cashier without fearing that I will collapse again and risking my life." Notwithstanding, that day, Defendant reprimanded Plaintiff, warned that she would be terminated.

189.   On September 25, 2022, Defendant assigned Plaintiff to support once again, where Plaintiff was required to push heavy merchandise, and have no chair to rest after 30 minutes of standing.

190.   Defendant failed to provide Plaintiff her accommodations on October 9, 10, 13, 14, 15, 28, 29, resulting in physically threats, harm, humiliation, and abuse because of Plaintiff's disabilities.

191.   On October 29, 2022, Cassandra, one of Defendant's managers refused Cassandra refused to provide Plaintiff a chair after Plaintiff begged for one, and enlisted the help of her coworker, Taylor.

192.   On November 1, 2022, Defendant once again physically threatened Plaintiff  by withholding her accommodations.

193.   On November 8, 2022, Disney reprimanded Plaintiff and warned her that she would be terminated upon her next reprimand even if she attended doctor's appointments that were medically necessary. Defendant continued to assign Plaintiff to Support because Plaintiff complained that her accommodations were not being met and that she was in physical danger.

194.   Defendant is vicariously or directly liable for the above-described environment because Defendant had actual knowledge of the discrimination and because Defendant's managers, supervisors and executives directly participated and facilitated the discrimination.

195. These allegations provide sufficient factual detail to suggest intentional discrimination in the form of a hostile work environment because of Plaintiff's disabilities.

196. Plaintiff has been damaged as a result of Defendant's unlawful employment practices in violation of the FCRA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant, containing the following relief:

A.     Under ADA 42 U.S.C. § 12112 and FCRA § 760.11(5)  an award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

B.     Under ADA 42 U.S.C. § 12112 and FCRA § 760.11(5), an award of damages in an amount to be determined at trial, plus prejudgment interest to compensate Plaintiff for all monetary and economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

C.     Under ADA, 42 U.S.C. § 12112 and FCRA § 760.11(5), an award of punitive damages for damages arising from Defendant's discriminatory

employment practices with malice or with reckless indifference to Plaintiff's rights under federal and state law;

D.     Under ADA 42 U.S.C. § 12112 and FCRA § 760.11(5), an award of costs that Plaintiff has incurred in this Action, as well as Plaintiff's reasonable attorneys' fees plus interest as much as the law allows; and

E.     Such other relief the Court deems just and proper.

### JURY DEMAND

Plaintiff Morgan Schoepfer demands a jury trial of all issues so triable under Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991.

Dated: February 9, 2023          Respectfully submitted,

*Brett Daniel Kaplan*

Brett Daniel Kaplan, Esq.
Florida Bar Number 1031866
**KAPLAN EMPLOYMENT LAW, P.A.**
1825 Main Street
Weston, Florida 33326
Telephone: (954) 529-8328
Email: brett@bkaplaw.com
*Counsel for Plaintiff Morgan Schoepfer*

35